Matter of Pegues v Martuscello (2025 NY Slip Op 50318(U))

[*1]

Matter of Pegues v Martuscello

2025 NY Slip Op 50318(U)

Decided on March 10, 2025

Supreme Court, Albany County

Lynch, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 10, 2025
Supreme Court, Albany County

In the Matter of the Application of Antonio D.D. Pegues, Petitioner, For a Judgment pursuant to Article 78 of the Civil Practice Law and Rules

against
Daniel F. Martuscello III, COMMISSIONER OF THE NEW YORK STATE DEPT. OF CORRECTIONS AND COMMUNITY SUPERVISION AND; ANTHONY RODRIGUEZ, DIRECTOR OF SPECIAL HOUSING AND INMATE DISCIPLINARY PROGRAMS, Respondents.

Index No. 9342-24

STATE OF NEW YORK 
OFFICE OF THE ATTORNEY GENERAL
Hon. Letitia James, Attorney General
Attn: Kate H. Nepveu, Assistant Solicitor General
The Capitol
Albany, New York 12224
Antonio D.D. Pegues

Peter A. Lynch, J.

INTRODUCTION
This is an abuse of power case! Upon review, Respondent failed to comply with its own rules, and, in so doing, violated Petitioner's due process rights, undermining the integrity of the [*2]entire proceeding. In this CPLR Article 78 proceeding, Petitioner challenges Respondent's finding he was guilty of Tier III disciplinary violations, and the imposition of penalties thereunder.
STATEMENT OF FACTS
On February 13, 2024, Officer Octobre issued a Misbehavior report against Petitioner.[FN1]
 Officer Octobre reported that they observed "I.G.R.C. representative" (Petitioner herein) with an object in his hand, that Petitioner refused a pat frisk order, ran away and threw an object into an unoccupied cell; the object was recovered and consisted of a cell phone, charger and cord (photographed).[FN2]
 Officer Octobre also indicated on the report that other inmates were involved.[FN3]

Petitioner was charged with Tier III violations: Unauthorized Exchange (Rule 113.15); Contraband (Rule 113.23); Interference with Employee (Rule 107.10); Refusing Direct Order (Rule 106.10); Refuse Search or frisk (Rule 115.10); and Movement Regulation violation (Rule 109.12). Upon the issuance of the charges Petitioner was placed in a Special Housing Unit (SHU) from February 13, 2024, to February 28, 2024.[FN4]
 Petitioner pled not guilty to the charges.[FN5]

DISCIPLINARY HEARING[FN6]

A disciplinary hearing took place over a series of dates, commencing on February 15, 2024, and continuing February 24, 2024, and on February 28, 2024.[FN7]
 The hearing officer was Michael Stasko.
At the commencement of the hearing on February 15, 2024, Petitioner advised he would like to call C.O. Marisco and inmate Arthur Lattan as witnesses relative to the subject incident.[FN8]
 The hearing officer offered Petitioner an opportunity to adjourn the hearing so that he could obtain assistance; Petitioner confirmed he needed assistance and sought to obtain documents to [*3]use in his defense, including the "UI memorandums from staff, contraband receipts, office form, logbook entries, witness statements."[FN9]
 This sounds fair. Not quite! Notwithstanding his offer to adjourn the proceeding, the hearing officer announced he would call Officer Octobre [author of the misbehavior report] as a witness "because he's not going to be available after today."[FN10]
 Of course, no assistant had been provided and Petitioner had not been given an opportunity to review any of the requested documents.[FN11]
 This abrupt about face constituted an abuse of power. Knowing that Petitioner sought assistance, and assuring Petitioner he could have assistance, the hearing officer went forward anyway with the testimony of the key witness in the case.
Officer Octobre confirmed that Petitioner had checked in before Petitioner did rounds.[FN12]
 Officer Octobre testified they observed Petitioner on Yankee North Gallery, and that Petitioner threw an item into cell Yankee 68 as he ran away, going downstairs and out of sight.[FN13]
Officer Octobre acknowledged Respondent is not housed in Yankee gallery.[FN14]
 The Misbehavior report reference to HBB Y-Gallery indicated location of the incident, not Petitioner's housing.[FN15]
Officer Octobre confirmed that Inmate Tucker was housed in cell Yankee 68, but was not present during the incident.[FN16]

Officer Octobre testified that the gates are locked but sometimes open.[FN17]
 Petitioner stated the significance of the gate being locked, is that one cannot walk or run from Yankee to Tango.[FN18]
 Officer Octobre later testified Petitioner "kept continuing, and he went through the gate and took off."[FN19]
 (Emphasis added) Of course, that testimony is inconsistent with Octobre's prior testimony, last seeing Petitioner going down the stairs. When asked, where to, he responded "I [*4]have no idea."[FN20]
 The hearing was adjourned, purportedly to give Petitioner tier assistance.[FN21]

The hearing was continued at 1:05 p.m. on February 24, 2024.[FN22]
 At the commencement, Petitioner advised he had not received assistance. The hearing officer claimed he had a "packet" to give to Petitioner, who, in turn, requested 24 hours to review prior to proceeding with the hearing. The hearing officer then advised he would not provide the requested paperwork to Petitioner, and advised there were no assistants.[FN23]
 In fine, the hearing officer initially offered to adjourn the proceeding to enable Petitioner to have assistance, reneged and went forward with testimony, renewed the assistance offer, and then denied assistance.
The hearing office then focused on Petitioner's failure to sign the Tier Assistance Form, notwithstanding the fact that Petitioner did not get assistance.[FN24]
 During the exchange over the Tier Assistance Form, the following colloquy took place:
Hearing Officer Stasko: Do you want to sign it because I'll give you everything."
Inmate Pegues: I will sign it.
Hearing Officer Stasko: This is not that you're getting it. This is what you want. When you fill this out, you're suppose to sign here."
Inmate Pegues: I did not have an assistant, Mr. Stasko, so what am I signing for?
Hearing Officer Stasko: You're not signing for anything but, I want this, I want that . . . "[FN25]
The hearing officer wrote "refused to sign" on the form.[FN26]
 The Court notes that the signature line for the assistant appears on the form immediately above the signature line for the inmate. Since the assistant line was unsigned, the dispute over the inmate signature is of no moment. It gets worse!
The hearing officer advised he had possession of the UI (Unusual Incident Report) but [*5]declined to give a copy to Petitioner, advising Petitioner could foil the documents.[FN27]
 The hearing Officer claimed he had the contraband receipts and memorandum, as well as the logbook, declined to give copies to Petitioner, and advised Petitioner he could FOIL same.[FN28]
 The hearing officer adjourned the proceeding over Petitioner's objection.[FN29]
 FOIL! Really! The purpose of document disclosure is to enable one to prepare a defense to the charges. By telling Petitioner to seek FOIL relief, the hearing officer demonstrated a profound disregard of his obligation to follow the rules and to conduct a fair proceeding. 
The hearing resumed at 1:26 p.m. on February 24, 2024.[FN30]
 Officer Marisco testified they didn't witness the incident but heard the radio report of the incident, and observed Officer Octobre with the phone.[FN31]
 Officer Marisco observed Petitioner walking (not running) in Tango gallery, not Yankee Gallery.[FN32]
 The Hearing Officer then advised Petitioner he could ask the witness questions but the questions had to be approved by the hearing officer.[FN33]
 Officer Marisco testified that gates are secure, but noted "It could have been left open. Anything could happen."[FN34]
 The hearing officer noted that normally the gates are locked.[FN35]

While the hearing transcript is unclear, it appears that Petitioner was afforded a brief period to review a logbook, since Petitioner noted there was no reference to this incident in the logbook, which the hearing officer acknowledged.[FN36]
 Petitioner also briefly reviewed the cell frisk form, and noted it was not his cell, i.e., that his cell was Roger 34, not Yankee 68.[FN37]

The hearing officer then read the UI into the record.[FN38]
In essence, it was claimed that on February 13, 2024 &commat; 6:15 p.m., Officer Octobre observed Petitioner running north on Y Gallery, [*6]and that he threw an object into a cell.[FN39]
 A cell phone was in Y-68 and recovered.[FN40]
Petitioner was located at the north end of the gate of HBBT gallery.[FN41]
 The UI states the phone was recovered from Petitioner, which, of course, is inconsistent with finding the phone in cell Y-68.[FN42]

The Hearing Officer displayed a photo of the cell phone, and Petitioner acknowledged observing the photo.[FN43]
 He then read the misbehavior report into the record, and noted other incarcerated inmates were involved.[FN44]

The hearing continued at 3:05 p.m. on February 24, 2024.[FN45]
 Officer Holsten testified that he asked I/I Lattan if he wanted to testify, that Lattan declined to testify for personal reasons.[FN46]

The hearing was continued on February 28, 2024, and Petitioner participated via phone.[FN47]
 The hearing officer dismissed the charge of Unauthorized Exchange (which was not listed in the Misbehavior report provided to Petitioner) and found Petitioner guilty of the balance of the charges.[FN48]
 The Hearing Officer stated his basis for the decision and found the testimony of Officers Octobre and Marsico to be credible.[FN49]

ADMINISTRATIVE APPEAL
Petitioner filed an administrative appeal.[FN50]
 On May 13, 2024, the Superintendent affirmed the disposition.[FN51]

TRANSFER ORDER
CPLR § 7803 provides, inter alia:
The only questions that may be raised in a proceeding under this article are:
1. whether the body or officer failed to perform a duty enjoined upon it by law; or
2. whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or
3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed; or
4. whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence. (Emphasis added)
CPLR § 7804 (g) provides:
(g) Hearing and determination; transfer to appellate division. Where the substantial evidence issue specified in question four of section 7803 is not raised, the court in which the proceeding is commenced shall itself dispose of the issues in the proceeding. Where such an issue is raised, the court shall first dispose of such other objections as could terminate the proceeding, including but not limited to lack of jurisdiction, statute of limitations and res judicata, without reaching the substantial evidence issue. If the determination of the other objections does not terminate the proceeding, the court shall make an order directing that it be transferred for disposition to a term of the appellate division held within the judicial department embracing the county in which the proceeding was commenced. When the proceeding comes before it, whether by appeal or transfer, the appellate division shall dispose of all issues in the proceeding, or, if the papers are insufficient, it may remit the proceeding. (Emphasis added)
This Court is mindful that a disciplinary hearing can be subject to a substantial evidence review (See Matter of Montgomery v. Royce, 221 AD3d 903 [2d Dept. 2023], where the Court held,
"A prison disciplinary determination made as a result of a hearing at which evidence was taken pursuant to direction by law must be supported by substantial evidence. Substantial evidence means such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact." (Internal quotations and citations omitted; emphasis added)
(See also Matter of Rooney v. City of New York, 2024 NY Misc. LEXIS 3836 [NY County Sup Ct. 2024), where the Court recognized the substantial evidence standard is applicable to a "trial-type hearing.") Here, there is nothing in the record to show that any witness was sworn to testify [*7]truthfully, and it certainly wasn't a "trial-type hearing."[FN52]
 (See Early v. Coughlin 198 AD2d 758 [3d Dept. 1993], where Court required sworn testimony in Tier III hearing). Thus, the subject hearing was not of a "plenary evidentiary ("quasi-judicial") kind," and does not present a substantial evidence issue subject to transfer in the first instance (See New York Practice, 6th Ed., Siegel & Connors, § 560, p. 1074). Moreover, the record discloses that Respondent violated Petitioner's due process rights to a fair hearing, more fully discussed below. Accordingly, this Court has determined there is no basis to transfer the proceeding to the Appellate Division.
POLICY
7 NYCRR § 250.2 provides, inter alia:
" . . . it is the department's policy that any administrative processes associated with any incarcerated individual or parolee who may be subject to discipline and grievances are conducted fairly to ensure that decisions are not influenced by stereotypes or biases based on age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status or domestic violence victim status. To do so, the department shall provide ongoing staff training, monitoring, and auditing systems to ensure compliance with all provisions of this policy." (Emphasis added)
In the Court's view, this express policy must be considered in conjunction with the review standard set forth in CPLR § 7803 (1) and (3), to wit:
1. whether the body or officer failed to perform a duty enjoined upon it by law; or . . .
3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed . . . (Emphasis added)
Here, the record is replete with Respondent's violation of the rules, in violation of Petitioner's due process rights, evidencing the hearing officer abused his discretion, and the proceedings were affected by errors of law.
RIGHT TO ASSISTANCE
7 NYCRR § 253.4 provides:
The inmate shall be provided with an assistant in accordance with the provisions of Subpart 251-4 of this Subchapter. (Emphasis added)
7 NYCRR § 251-4.1 provides:
(a) An incarcerated individual shall have the opportunity to request assistance from an [*8]employee, to be designated by the facility, who shall assist the incarcerated individual when a misbehavior report has been issued against the incarcerated individual if:
(1) the incarcerated individual is either illiterate or non-English speaking; or
(2) the incarcerated individual is sensorially disabled (in which case the incarcerated individual will be provided reasonable accommodations including, but not limited to, the provision of a qualified sign language interpreter for a deaf and hard of hearing incarcerated individual who uses sign language to communicate); or
(3) the incarcerated individual is placed in segregated confinement pending a superintendent's hearing to be conducted pursuant to Part 254 of this Title.
(b) In other cases where a misbehavior report has been issued, the review officer or hearing officer, in his absolute discretion, may offer an incarcerated individual the opportunity to seek employee assistance where such assistance would enable the incarcerated individual to adequately comprehend the case in order to respond to the charges. (Emphasis added)
7 NYCRR § 251-4.4 provides:
"The assistant's role is to speak with the inmate charged, to explain the charges to the inmate, interview witnesses and to report the results of his efforts to the inmate. He may assist the inmate in obtaining documentary evidence or written statements which may be necessary. The assistant may be required by the hearing officer to be present at the disciplinary or superintendent's hearing."
Here, the record shows that Petitioner was placed in the Special Housing Unit on February 13, 2024, and during the pendency of the proceeding. Thus, Petitioner qualified for assistance pursuant to the provisions of part (a) (3) above, and the Hearing Officer had no discretion to deny the assistance request (C.f. Matter of Simpson v. Jordan, 2025 NY App. Div. LEXIS 1129, p. 3 [3d Dept. 2025]). It is the determination of the Court that the Hearing Officer's election not to appoint an assistant violated 7 NYCRR 251-4.1 [a] and constituted an abuse of discretion and error of law which undermined the integrity of the entire proceeding. Clearly, the assistance denial was intentional and undermined the Petitioner's due process rights to a fair hearing. This constitutional violation necessitates vacatur and expungement (See Matter of Getfield v Annucci, 173 AD3d 1318 [3d Dept. 2019]).
HEARING OFFICER STASKO
7 NYCRR § 251.1 provides:
(a) There shall be at each correctional facility one or more hearing officers of the rank of lieutenant or above who shall function as a disciplinary hearing officer, the number to be dependent upon the needs of the facility. The superintendent may, in his discretion, designate some other employee to conduct disciplinary hearings.
(b) The disciplinary hearing officer shall be responsible for conducting disciplinary hearings in an impartial manner. No person who has participated in any investigation of the acts shall be a hearing officer at a hearing relating to those acts, nor shall any person who has prepared or caused to be prepared the misbehavior report on which a hearing is held, act as the hearing officer on that charge. (emphasis added)
The record does not identify whether Officer Stasko held a rank of lieutenant or above, or whether he was otherwise designated to serve as a hearing officer.
7 NYCRR § 254.1 provides:
"Prior to presiding over a superintendent's hearing, the hearing officer shall receive training on relevant topics, including implicit bias and procedural due process rights." (emphasis added)
Despite the training mandate, it is manifest that hearing Officer Stasko violated the rules and manipulated the process to undermine the fundamental fairness of the proceeding.
On February 15, 2024, Stasko advised Petitioner he would grant a continuance to enable him to get assistance. Ok, sounds good! Then, in an abrupt about face, Stasko elected to call Officer Octobre as a witness, in advance of any assistance or document disclosure. Since Octobre was the only claimed eyewitness to the events at issue, Stasko's tactics undermined Petitioner's ability to effectively pose questions to the key witness, and violated the 24-hour rule set forth in 7 NYCRR § 253.6 (a), which provides:
Upon receipt of a misbehavior report from the review officer, the hearing officer shall commence the disciplinary hearing as follows:
(a) The misbehavior report shall be served on the inmate at least 24 hours before the disciplinary hearing. If the inmate requests an assistant and is eligible for an assistant in accordance with the provisions of sub-part 251-4 of this Title, the hearing may not be held until 24 hours after the assistant's initial meeting with the inmate. (Emphasis added)
It gets worse!
RIGHT TO CALL WITNESSES
Petitioner has a due process right to participate in and call witnesses at a disciplinary hearing (see Matter of Henry v. Fischer, 28 NY3d 1135, 1138 [2016], where the Court held,
"An inmate charged with violating a prison regulation is entitled to due process protections which include a right "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"(emphasis added)
7 NYCRR § 253.5 provides, inter alia:
"(a) The inmate may call witnesses on his behalf provided their testimony is material, is not redundant, and doing so does not jeopardize institutional safety or correctional goals. If permission to call a witness is denied, the hearing officer shall give the inmate a written statement stating the reasons for the denial, including the specific threat to institutional safety or correctional goals presented.
(b) Any witness shall be allowed to testify at the hearing in the presence of the inmate unless the hearing officer determines that so doing will jeopardize institutional safety or correctional goals. Where an inmate is not permitted to have a witness present, such witness may be interviewed out of the presence of the inmate and such interview tape [*9]recorded. The recording of the witness' statement is to be made available to the inmate at the hearing unless the hearing officer determines that so doing would jeopardize institutional safety or correctional goals."
(c) An inmate may request a witness by either:
(1) informing his assistant or the hearing officer before the hearing; or
(2) informing the hearing officer during the hearing.
Here, Stasko appears to go to great lengths to verify that witness Lattan had, in fact, refused to testify, as required by 7 NYCRR § 254.5 (a).[FN53]
 During the hearing, the Officer noted "I will go back and get that on the tape that he refused to sign from the officer . . . I have to go get her testimony that he—that he refused to come to be a witness and also that he refused to either give a reason, sign, whatever the case may be."[FN54]
 The Hearing Officer stated, "I'm going to bring him in."[FN55]
 He did. Officer Holsten testified that he asked I/I Lattan if he wanted to testify, that Lattan declined to testify for personal reasons.[FN56]
 Once again, sounds good. Not quite!
Stasko knows that Petitioner is in the SHU, and that Petitioner requested Inmate Lattan be called as a witness. As aforementioned, Stasko erroneously denied the appointment of an assistant. In so doing, Stasko knew Petitioner had no means to independently ascertain whether Lattan will testify. As a result, Petitioner is subject to Holsten's unsworn testimony that Lattan refused to testify for personal reasons, without recourse. Stasko's tactics effectively prevented Petitioner, through an assistant, to independently determine if Lattan would testify (See 7 NYCRR § 253.5 (c) (1)). In so doing, he violated Petitioner's due process right to call witnesses in his defense (See Matter of Zielinski v Venettozzi, 35 NY3d 1082 [2020]).
LOGBOOK
Upon the commencement of the proceeding on February 15, 2024, Petitioner had requested he be provided with a copy of the Logbook. As aforementioned, the hearing officer initially advised he would grant a continuance to enable Petitioner to have assistance and access to the requested documents. Of course, no continuance was implemented, and Officer Octobre testified on February 15, 2024. Then, on February 24, 2024, the hearing officer advised he would not provide the requested paperwork and denied appointing an assistant. The foregoing notwithstanding, it appears Petitioner was then allowed to briefly examine the logbook, and noted the subject incident was not recorded therein.[FN57]

Knowing, the logbook was squarely at issue, in its Answer, the Attorney General [*10]identified a list of documents, including the logbook, and noted, "For Review only By the Court" and "Available upon Request."[FN58]
 Seriously! In this Court's view, the better practice would have been to submit a full record in accord with its obligation under CPLR 7804 (e), which, of course, Respondent chose not to do. Rather than subjecting Petitioner to further delay which would be occasioned by the Court making a "request", the better path is to recognize the gross due process violations and issue a decision accordingly.[FN59]

AUDIO RECORDING OF HEARING
7 NYCRR § 254.6 (a) (2) provides:
"(2) The inmate shall be present at the hearing unless he or she refuses to attend or is excluded for reasons of institutional safety or correctional goals. The entire hearing must be electronically recorded." (emphasis added)
The hearing was electronically recorded. Respondent, however, chose not to present the recording of the proceeding to the Court. There is no evidence the recording was not available (c.f., Matter of Caraway v Annucci, 190 AD3d 1198, 1199 [3d Dept. 2021]; Matter of Malloy v. Rodriguez, 200 AD3d 1382, 1383 [3d Dept. 2021]). This failure is of great significance.
Officer Octobre testified they saw Petitioner discard an item of contraband in cell Yankee 68, and the contraband was recovered therein. The cell, however, was not Petitioner's. Significantly Petitioner was located in Tango gallery, not Yankee Gallery. Thus, at issue is the question of whether the gate between Tango and Yankee gallery was locked. If locked, Petitioner could not have fled from Yankee to Tango. Officer Marisco testified the gate was locked but could have been left open (i.e. speculation). Officer Octobre initially testified gates are locked but sometimes open (i.e. speculation). Then, in an abrupt shift, Officer Octobre testified seeing Petitioner go through the open gate, albeit they also testified they last saw Petitioner walking downstairs, i.e. the Officer's testimony was internally inconsistent. Notwithstanding the fact that there was no reference to the incident in the Logbook, and Octobre's sudden clarity that the gate was open, the hearing officer found the witness's testimony was wholly credible. Frankly, an audio recording would have disclosed not only what was said, but how it was said, which, of course, is a factor in weighing the credibility of witness testimony. By failing to submit the audio recording as part of the record of this proceeding, Respondent undermined the Court's ability to evaluate whether the hearing officer's adoption of Officer Octobre's testimony was supported by the record. Rather than subjecting Petitioner to further delay which would be occasioned by the Court making a request for the audio recording of the proceeding, the better path is to recognize the gross due process violations and issue a decision accordingly.
CONCLUSION
For the reasons more fully stated above, the Petition is Granted, and the Guilty dispositions are vacated, and the penalty set aside, and it is further,
ORDERED, ADJUDGED, AND DECREED, that Respondent is directed to expunge all the charges from Petitioner's record to wit: Contraband (Rule 113.23); Interference with [*11]Employee (Rule 107.10); Refusing Direct Order (Rule 106.10); Refuse Search or frisk (Rule 115.10); and Movement Regulation violation (Rule 109.12), and it is further,
ORDERED, ADJUDGED, AND DECREED, that Respondent is directed to pay costs in the sum of $200.00, plus disbursements in the sum of $15.00, a total of $215.00, to Petitioner
This memorandum constitutes the decision, order, and judgment of the Court.[FN60]

Dated: March 10, 2025
Albany, New York
PETER A. LYNCH, J.S.C.
PAPERS CONSIDERED:
1. Letter of Antonio D.D. Pegues (undated) received September 24, 2024; and
2. Letter of Antonio D.D. Pegues dated November 12, 2024; and
3. Proposed Notice of Petition dated 8/19/24 and Order top Show Cause; and
4. Affidavit of Service of Antonio D.D. Pegues dated 8/19/24; and
5. Order of the Hon. Christina Ryba dated October 17, 2024, granting Petitioner Poor Person status; and
6. Order to Show Cause issued by the Hon. Christina Ryba on October 17, 2024, returnable December 20, 2024; and
7. Requests for Judicial Intervention dated 8/19/24 and 10/24/24; and 
8. Verified Petition of D.D. Pegues dated August 19, 2024, with Exhibits "A" to "F"; and
9. Letters of Attorney General dated December 12, 2024, and December 13, 2024, January 23, 2025, and January 30, 2025, requesting and confirming adjournment of return date to from 10. December 20, 2024, to March 7, 2025; and
10. Respondent's Verified Answer dated February 27, 2025, with annexed Exhibit's "A" to "D," with affidavit of service; and
11. Proposed Transfer Order (Declined by the Court).

Footnotes

Footnote 1: See Answer Exhibit "A." There ae two (2) copies of the Misbehavior Report, each with 6 charges but there is an obvious error. In one report, there is a charge of Unauthorized Exchange, but same charge is not in the other copy; rather, in the other report, there are two charges of refusing direct order, while there is only one charge of refusing a direct order in the first report.

Footnote 2: The I.G.R. C. is the inmate grievance resolution committee, comprised of inmate peers and staff members (See COR § 139; 7 NYCRR § 701.1 (c). 

Footnote 3: There is nothing in the record to indicate that other inmates were involved.

Footnote 4: Petition ¶ 7. See also See Answer Exhibit "C" — hearing transcript p. 90.

Footnote 5: Answer Exhibit "A" — Hearing Record Sheet. Answer Exhibit "C" — hearing transcript p 50-52.

Footnote 6: See Answer Exhibit "C" — hearing transcript submitted without audio recording.

Footnote 7: Answer Exhibit "B" hearing record sheet and Exhibit "D" Hearing transcript. The Court notes that the hearing was recorded but the audio recording was not submitted as part of the record of this proceeding.

Footnote 8: Answer Exhibit "C" — hearing transcript p. 4-6. 

Footnote 9:Answer Exhibit "A" — Tier Assistance Form; Answer Exhibit "C" — hearing transcript p. 7-8. 

Footnote 10:Answer Exhibit "C" — hearing transcript p. 10. There is no explanation in the record why Officer Octobre would not be available any other date. In any event, Officer Octobre's personal schedule does not take precedence over the rules! 

Footnote 11: Answer Exhibit "C" — hearing transcript p. 59.

Footnote 12: Answer Exhibit "C" — hearing transcript p. 65.

Footnote 13: Answer Exhibit "C" — hearing transcript p. 60.

Footnote 14:Answer Exhibit "C" — hearing transcript p. 60.

Footnote 15: Answer Exhibit "C" — hearing transcript p. 61.

Footnote 16:Answer Exhibit "C" — hearing transcript p. 62.

Footnote 17:Answer Exhibit "C" — hearing transcript p. 66.

Footnote 18:Answer Exhibit "C" — hearing transcript p. 66.

Footnote 19: Answer Exhibit "C" — hearing transcript p. 75.

Footnote 20: Answer Exhibit "C" — hearing transcript p. 77.

Footnote 21: Answer Exhibit "C" — hearing transcript p. 80. At that juncture, tier assistance was a meaningless gesture, since the hearing officer already let the key testify.

Footnote 22: Answer Exhibit "C" — hearing transcript p. 12.

Footnote 23: Answer Exhibit "C" — hearing transcript p. 14-15.

Footnote 24: Answer Exhibit "C" — hearing transcript p. 16-17. See also, Answer Exhibit "A" — Tier Assistance Form (unsigned). The Court notes that the "Assistant Signature" is blank, consistent with Petitioner's claim he had not received assistance, and, hence, alleged refusal to sign. The Court notes, Petitioner claimed "I would like to sign it, but I have to have an assistant." (Hearing Tr. p. 15-16) 

Footnote 25: Answer Exhibit "C" — hearing transcript p. 16-17.

Footnote 26: Answer Exhibit "C" — hearing transcript p. 18.

Footnote 27: Answer Exhibit "C" — hearing transcript p. 18. The FOIL comment evinced a blatant disregard of Petitioner's right to due process.

Footnote 28:Answer Exhibit "C" — hearing transcript p. 18 — 19.

Footnote 29:Answer Exhibit "C" — hearing transcript p. 21-22.

Footnote 30:Answer Exhibit "C" — hearing transcript p. 23.

Footnote 31:Answer Exhibit "C" — hearing transcript p. 24-25.

Footnote 32:Answer Exhibit "C" — hearing transcript p. 25-26.

Footnote 33:Answer Exhibit "C" — hearing transcript p. 26-27.

Footnote 34:Answer Exhibit "C" — hearing transcript p. 29-30.

Footnote 35:Answer Exhibit "C" — hearing transcript p. 30.

Footnote 36:Answer Exhibit "C" — hearing transcript p. 30-32.

Footnote 37:Answer Exhibit "C" — hearing transcript p. 32-33.

Footnote 38:Answer Exhibit "C" — hearing transcript p. 34.

Footnote 39:Answer Exhibit "C" — hearing transcript p. 34.

Footnote 40:Answer Exhibit "C" — hearing transcript p. 35.

Footnote 41:Answer Exhibit "C" — hearing transcript p. 35. Officer Marisco observed Petitioner in Tango, not Yankee gallery.

Footnote 42:Answer Exhibit "C" — hearing transcript p. 37-41.

Footnote 43:Answer Exhibit "C" — hearing transcript p. 43. Note, photos not included in the record.

Footnote 44:Answer Exhibit "C" — hearing transcript p. 44-48. There was a discrepancy in the charges identified in the Officer's Misbehavior report and Petitioners, and a discrepancy in the reference to other inmates involved — see Answer Exhibit "A" — two copies of misbehavior report. As Petitioner noted, he had a copy of the report with two counts of Refusing Direct Orders, and the Hearing Officer had one count of Refusing Direct Order and one Count of Unauthorized Exchange — see Answer Exhibit "C" — hearing transcript p. 53. The Unauthorized Exchange charge was ultimately dismissed. 

Footnote 45:Answer Exhibit "C" — hearing transcript p. 81.

Footnote 46:Answer Exhibit "C" — hearing transcript p. 81-82.

Footnote 47:Answer Exhibit "C" — hearing transcript p. 84. Notably, Petitioner had been transferred to another facility during the pendency of the proceeding — See Petition ¶ 20-22.

Footnote 48:Answer Exhibit "C" — hearing transcript p. 85.

Footnote 49:Answer Exhibit "C" — hearing transcript p. 85-88.

Footnote 50:Answer Exhibit "D." 

Footnote 51:Answer Exhibit "A." 

Footnote 52: Three witnesses testified, Officer Marisco (Tr. commencing at p. 23), Octobre (Tr. Commencing at p. 59), and Holsten (Tr. p. 81-82). In reviewing the transcript, there is no indication that any witness was sworn to tell the truth. Since Respondent failed to submit the audio recording of the proceeding, there is no record evidence that any witness was sworn to tell the truth.

Footnote 53:See Answer Exhibit "A" — unsigned witness refusal form dated 2/24/24. 

Footnote 54:See Answer Exhibit "C" — hearing transcript p. 50. 

Footnote 55:See Answer Exhibit "C" — hearing transcript p. 78.

Footnote 56:Answer Exhibit "C" — hearing transcript p. 81-82.

Footnote 57:There is nothing in the record to evidence how long a period Petitioner was given to view the logbook, nor whether he was able to complete a review thereof.

Footnote 58:Answer Exhibit "B."

Footnote 59:The Attorney General had already delayed the proceeding by seeking an adjournment of the return date from December 20, 2024, to March 7, 2025.

Footnote 60:Notice of Entry and service in accord with CPLR R 2220 is required.